IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 19-01-BU-DLC |
| | CV 22-08-BU-DLC |
| Plaintiff/Respondent, | |
| vs. | ORDER DENYING § 2255 MOTION |
| | AND DENYING CERTIFICATE |
| ROBERT LEE CRAWFORD, | OF APPEALABILITY |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Robert Lee Crawford's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Crawford pled guilty to one count of being a felon in possession of a firearm and is currently serving a 96-month sentence. He is proceeding pro se.

**I. Preliminary Review**

Before the United States is required to respond, the Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring)

1

(referring to Rules Governing § 2254 Cases). But the Court should "eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

On January 23, 2019, a grand jury indicted Crawford on two counts of being a felon in possession of firearms and ammunition, violations of 18 U.S.C. § 922(g)(1). Count 1 involved four long guns, one with a loaded 30-round magazine, and one handgun, all found in a safe in Crawford's residence. Count 2 involved a Glock semiautomatic pistol found near him at the time of his arrest. *See* Indictment (Doc. 7) at 2. Michael Sherwood was appointed to represent Crawford. *See* Order (Doc. 18).

Crawford moved to suppress the evidence. He contested the reasonableness of the seizure and search of the safe and argued that the Glock found at his subsequent arrest was fruit of the poisonous tree. He also argued that the arresting parole and probation officers failed to comply with Montana law. The Court denied the motion after an evidentiary hearing. *See* Order (Doc. 35).

Crawford then entered into a plea agreement with the United States. In exchange for his guilty plea to Count 2, the United States agreed to dismiss Count

1 and allow Crawford to appeal the denial of his suppression motion, subject to the Court's acceptance of the plea agreement. *See* Plea Agreement (Doc. 43) at 2–3 ¶¶ 2–3. At the change of plea hearing on July 11, 2019, United States Magistrate Judge Jeremiah C. Lynch discussed with the parties the possibility that the firearms involved in Count 1 might be counted against Crawford at sentencing. Crawford decided to proceed and pled guilty to Count 2 of the superseding indictment.[1] *See* Superseding Indictment (Doc. 38); Change of Plea Tr. (Doc. 74) at 25:15–29:12.

A presentence report was prepared. At sentencing, the Court found that the firearms in the safe should be counted in the guideline calculations. The base offense level was 26, because a gun in the safe had a large-capacity magazine. *See* U.S.S.G. § 2K2.1(a)(1) (Nov. 1, 2018); Statement of Reasons (Doc. 66) at 1 § I; Presentence Report (Doc. 67) ¶ 33. Crawford received upward adjustments totaling three levels because his offense involved six firearms, and the Glock involved in Count 2 was stolen. *See* U.S.S.G. § 2K2.1(b)(1), (4). Crawford also received a three-level downward adjustment for acceptance of responsibility. *See* U.S.S.G. § 3E.1. With a total offense level of 26 and a criminal history category of V, the advisory guideline range was 110 to 137 months, modified to 110 to 120 months by the ten-year statutory maximum. *See* 18 U.S.C. §§ 922(g)(1)(A),

---

[1] The grand jury issued the superseding indictment shortly after the Supreme Court clarified the elements of an offense under 18 U.S.C. § 922(g). *See Rehaif v. United States*, ___ U.S. ___, 139 S. Ct. 2191, 2194 (2019).

924(a)(2)[2] (eff. Oct. 6, 2006); U.S.S.G. ch. 5, Part A (Sentencing Table), § 5G1.1(c)(1); Statement of Reasons at 1 § III; Presentence Report ¶¶ 32–42, 61–63, 134.  To fulfill the sentencing objectives of 18 U.S.C. § 3553(a), the Court varied downward to a sentence of 96 months in prison, to be followed by three years' supervised release.  *See* Minutes (Doc. 64); Judgment (Doc. 65) at 2–3.

Crawford appealed.  On November 2, 2020, the Court of Appeals affirmed his conviction.  *See* Mem. at 1–3 (Doc. 83), *United States v. Crawford*, No. 19-30259 (9th Cir. Nov. 2, 2020).  Representing himself, Crawford filed a petition for writ of *certiorari* in the United States Supreme Court.  The petition was denied on October 4, 2021.  *See* Clerk Letter (Doc. 92).

In August 2021, Crawford filed a motion for compassionate release under 18 U.S.C. § 3582(c).  *See* Mot. (Doc. 85).  Counsel was appointed to represent him but withdrew on November 23, 2021.  Crawford, again acting for himself, filed a reply in support of his motion.  *See* Order (Doc. 98); Reply (Doc. 99).  The § 3582(c) motion was denied on January 28, 2022.  *See* Order (Doc. 102).

Because Crawford's submissions in the § 3582 motion depended in part on claims cognizable under 28 U.S.C. § 2255, the Court gave Crawford the opportunity to amend his motion and add claims if he wanted to proceed under § 2255.  *See* Order (Doc. 102) at 5.  On February 8, 2022, Crawford filed a formal §

---

[2] The penalty is now found in § 924(a)(8) and is 15 years rather than ten.

2255 motion. *See* Mot. § 2255 (Doc. 103) at 6 ¶ C.

Crawford's conviction became final when the Supreme Court denied his petition for writ of *certiorari* on October 4, 2021. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). His § 2255 motion is timely. *See* 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988).

### III. Claims and Analysis

The Court has considered all of Crawford's challenges to the validity of his conviction or sentence, regardless of whether he made them in his formal § 2255 motion (Docs. 103, 103-1) or in the briefing of his motion under 18 U.S.C. § 3582(c)(1)(A). *See, e.g.*, Mot. § 3582 (Doc. 85) at 5, 6 paras. 1, 3–4; Br. § 3582 (Doc. 86) at 1–11; Reply re: § 3582 Mot. (Doc. 99) at 5–12, 18–20.

A.  **Summary of the Search and Arrest**

The search of Crawford's residence and the justification for his arrest lie at the heart of his claims.[3] The Court will briefly summarize how they occurred. Many matters that concern Crawford are not reflected in this summary. The point is to clarify what was and was not decided at the suppression hearing and, consequently, why Crawford's allegations do not undermine the Court's

---

[3] The appellate court held that Crawford lacked standing to challenge the seizure and search of the safe and discarded the Glock handgun before he was seized. Therefore, he could not lawfully invoke the protection of the Fourth Amendment. Still, the course of events looms large in Crawford's view of the case and is central to how the case developed.

confidence in the outcome of the case.

Shortly before Crawford's residence was searched, parole and probation officers in Butte-Silver Bow County knew deputy sheriffs in Lewis and Clark County had stopped a vehicle in which Crawford was a passenger. The deputies had received a tip that one or more occupants in the vehicle were trafficking in methamphetamine. They had watched the vehicle leave a residence they were also familiar with. They stopped the vehicle for a traffic violation.

The parole and probation officers knew Crawford had recently violated the conditions of his parole by using marijuana, methamphetamine, and alcohol. They knew Crawford's mere presence in Lewis and Clark County was a violation of his conditions. They heard that the deputies saw rifles (apparently in cases) and handguns in the vehicle. They heard that a drug dog alerted on the vehicle. They heard that the driver, Crystal Gilbreath, claimed all the guns belonged to her. They knew she was Crawford's girlfriend and she might not tell the truth if she knew he was not permitted to have access to weapons. Crawford contests the meaning of some of these facts. Nonetheless, what the officers collectively knew[4] gave them reasonable suspicion to believe Crawford was not in full compliance with the

---

[4] *See, e.g.*, *United States v. Ramirez*, 473 F.3d 1026, 1030–37 (9th Cir. 2007) (explaining the collective-knowledge doctrine); *see also id.* at 1037–38 (Kozinski, J., concurring). *Ramirez* involved probable cause to support a search. Here, only reasonable suspicion was required to support the search, because Crawford was on parole.

conditions of his release and, therefore, to search his residence.

Once parole officers searched the residence, they knew more. They knew there was a small amount of ammunition in the bedroom that Crawford and Gilbreath shared. They found knives of an uncommon nature that could be used as weapons, whether they were obtained or possessed with that use in mind or not. They knew there was a large safe in the bedroom, and they knew they could not see what was in it. Reasonable people would think that if drugs or firearms were present in the residence, they might well be concealed in the safe. After the garage was entered, the officers knew it harbored chemicals that could be used in manufacturing methamphetamine. Again, Crawford might dispute the meaning of these facts, but he does not dispute their existence.

Officer Blando and Officer Cameron talked to Gilbreath outside the house.[5] Gilbreath told them she did not have the combination for the safe and had no use for the safe. Crawford disputes that this conversation occurred, but testimony at the suppression hearing supported it. When Crawford was asked about the safe, he said it belonged to Gilbreath. A reasonable parole officer concerned that Crawford was not complying with his conditions was not required to trust Crawford's denial of any control over or access to the safe. When the safe was cut open, the officers

---

[5] Blando testified at the suppression hearing. Cameron and Gilbreath did not. Crawford's claim that Gilbreath told counsel she did not talk to Blando and Cameron is addressed in Part B(1) below, at pages 10–11.

found five firearms and documents in Crawford's name inside it.

The only issue presented at the suppression hearing was whether the firearms involved in Counts 1 and 2 should be excluded from evidence at trial because they were unlawfully obtained. The facts set forth above were sufficient to show the parole officers had reasonable suspicion to search the residence, seize and search the safe. After the safe was opened, they had reason to arrest Crawford for violating his parole. "Reasonable suspicion" is just that—reason to suspect that a parolee is not complying with conditions of his release. It is not certainty, and it need not rule out all other possibilities. It is not close to the level of proof beyond reasonable doubt that is required to support a conviction. The Court denied the motion to suppress based on the legal standards applicable to searches of parolees. *See* Order (Doc. 35) at 23–24, 14–16.

### B. Crawford's Claims

#### 1. Ineffective Assistance of Counsel

Crawford claims that counsel was ineffective in various respects. See Mot. Attachment (Doc. 103) at 7–25. These claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Crawford must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional

8

performance, the result of the proceeding would have been different, *id.* at 694.

Crawford asserts that counsel did not adequately investigate the case and did not adequately contest the facts asserted by the witnesses at the suppression hearing. *See* Mot. Attachment (Doc. 103) at 7. He also contests many facts asserted in the chronological notes and reports submitted with the briefs. *See id.* at 7–25. His view of what counsel did wrong mistakes the nature of the suppression hearing and its difference from a trial on the merits of an indictment.

At the suppression hearing, the Court did not find that Crawford was responsible for the firearms. It did not find that all of Blando's and Barrett's testimony accurately represented the true state of affairs or that the notes and reports of other law enforcement or parole officers, *see, e.g.*, Rivera Report (Doc. 26-1); Miller Report (Doc. 28-1), were all true.

Denial of the motion to suppress did not mean that Crawford was guilty. It only meant that he must choose between pleading guilty or standing trial, knowing that the United States would introduce all the firearms at trial and present testimony to the jury about the circumstances in which they were found. Had Crawford opted for trial, the United States might have called only Officers Blando and Barrett to testify, but it likely would have called additional witnesses. Crawford could have confronted all the witnesses the United States called and impeached their testimony with prior inconsistent statements. *See, e.g.*, Mot.

Attachment at 11.  He could have introduced evidence and testimony to show the jury he did not have access to the safe.  Crawford could have testified himself and explained to the jury that he found the Glock under the couch and put it outside on the sidewalk near where it was found when he was arrested.  *See id.* at 12, 16.  He could have testified to all the other facts and circumstances he believed to be true.  *See, e.g.*, Sentencing Tr. (Doc. 75) at 16:3–35:4.  He could have compelled Gilbreath and other witnesses to testify.  He could have asked her, for instance, whether she spoke with Blando and Cameron outside Crawford's house on July 9.  *See* Mot. Attachment at 11.  Then the jury would have decided which witnesses to believe, which evidence to credit, and, ultimately, whether Crawford was guilty beyond reasonable doubt or not guilty.

    Crawford knew he had these rights and opportunities, and he knew he would give them up if he chose to plead guilty.  *See* Change of Plea Tr. (Doc 74) at 30:25–33:11; Plea Agreement (Doc. 43) at 4–7 ¶ 5.  He pled guilty.  The Court had no need to find, for example, "that Crawford tried to flee and ditch[ed] the gun in flight" when he was arrested.  Mot. Attachment at 17.  Crawford was convicted of Count 2 because he admitted it.  *See* Change of Plea Tr. (Doc. 74) at 33:12–37:18.

    Crawford does not identify anything that would, to a reasonable probability, change the outcome of the suppression motion.  He states that Gilbreath told counsel she "did not speak to PO Blando or Cameron about the safe at all."  Mot.

Attachment at 11. Counsel was indeed aware of this information. He intended to call Gilbreath to testify at sentencing. *See* Sentencing Mem. (Doc. 60) at 5–6 & n.1, 10–12. (In the end, counsel and Crawford decided not to call her. *See* Sentencing Tr. (Doc. 75) at 6:7–13. Crawford does not mention this fact in his current submissions.) Even if Gilbreath had testified at the suppression hearing and contradicted Blando, *Crawford* remained the focus of the investigation. He said the safe belonged to Gilbreath, but she did not have the combination. The officers were not required to accept Crawford's denial of access to the safe at face value. They reasonably suspected he was not in compliance with the conditions of his parole, and they had reason to search the safe to determine whether it contained evidence of violations. The law did not require them to give up based on what either Gilbreath or Crawford did or did not say.[6]

Crawford also fails to identify any fact that was both unknown to him before he decided to plead guilty and also capable of convincing a reasonable person to choose trial rather than a guilty plea. *See, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 59–60 (1985); *Turner v. Calderon*, 281 F.3d 851, 873 (9th Cir. 2002). In particular, Crawford knew that his advisory guideline range might be 87 to 108 months, or

---

[6] Crawford lacked standing to file a motion to suppress the seizure and search of the safe, precisely *because* he repeatedly denied any control over or access to it. *See* Mem. at 2 ¶ 1, *Crawford*, No. 19-30259. Therefore, he is unable to show prejudice under the *Strickland* test. *See Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993). Even if Gilbreath's Fourth Amendment rights had been violated by the seizure and search of the safe, Crawford could not rely on a violation of *her* rights to suppress evidence offered against *him*.

100 to 125 months, capped at the statutory maximum of 120 months. *See* Change of Plea Tr. at 24:6–18, 26:3–9, 28:5–12, 29:4–12. His allegations do not call into question the voluntariness or intelligence of his guilty plea.

At sentencing, the Court found, by a preponderance of the evidence, that Crawford was responsible for the firearms in the safe. As a result, they counted against him in the guideline calculation. *See* Sentencing Tr. (Doc. 75) at 8:1–12:1. These facts do not suggest counsel was ineffective. The standard of proof at sentencing was higher—that is, harder for the United States to meet—than the standard at the suppression hearing. But more than reasonable suspicion was actually shown at the suppression hearing. *See* order (Doc. 35) at 15, 18–19. And one more important fact was known at the time of sentencing. Crawford pled guilty to Count 2, amply demonstrating his willingness to possess firearms despite knowing he was prohibited. That is no small factor in the reasonableness of the finding that he had constructive possession of the firearms in the safe. The Court sees no basis to question its finding that Crawford either had "exclusive control and dominion" over the safe and the firearms inside it or, at the least, the "ability to produce" the firearms if and when he wanted them. *See* Sentencing Tr. at 11:6–23.

Crawford does not identify any significant fact counsel failed to present or failed to contest that might have changed the outcome of the case. He does not show that counsel's performance fell outside the wide scope of reasonable

12

professional assistance.  Nor is there a reasonable probability that Crawford could have obtained a better outcome.  Neither prong of the *Strickland* test is met.  This claim is denied.

### 2.  Prosecutorial Misconduct

Crawford alleges that the United States knowingly presented false evidence at the suppression hearing because some of the testimony was inconsistent with statements by the same witnesses in prior interviews.  He also contends that no one produced evidence supporting Barrett's testimony that he spoke with informants and received a tip from the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). *See* Mot. Attachment (Doc. 103) at 26; *see also Napue v. Illinois*, 360 U.S. 264, 272 (1959).

Crawford does not explain why the prosecutor had to believe the statements to the investigator were complete and accurate.  Regardless, Crawford does not claim no informants existed, merely that there were two rather than three and one of them did not say anything about a gun.  *See* Mot. Attachment (Doc. 103) at 26; Mot. Ex. F at 26–27 (Doc. 103-1 at 44–45).  He claims the ATF was not watching him because no "formal investigation" was opened.  *See, e.g.*, Mot. Ex. B at 1 ¶¶ 3–4 (Doc. 103-1 at 3); *see also* Mot. § 3582 (Doc. 85) at 6.  The Court sees no reason a formal investigation would necessarily be opened when ATF is merely "watching" someone and is concerned enough to alert parole and probation officers

13

to use caution. Law enforcement officers do many things that never result in a criminal prosecution. It would not be surprising if they also do many things that do not develop into a "formal investigation."

Crawford's allegations do not support a reasonable inference that the prosecutor knowingly presented false and material testimony. This claim is denied.

### 3. Right to Confrontation

Crawford claims his right to confrontation was violated when the United States did not call at the suppression hearing all the witnesses who had personal knowledge of important facts. *See* Mot. Attachment at 27; *see also* Mot. § 3582 (Doc. 85) at 6; Br. § 3582 Mot. (Doc. 86) at 10 ¶ E.

Again, the only issue at the suppression hearing was whether the firearms were obtained in violation of Crawford's rights, not whether Crawford actually had access to the contents of the safe or whether an informant actually saw Crawford in possession of a firearm. The Confrontation Clause is not violated when hearsay testimony is presented to show what information officers had when they decided to conduct a search. *See, e.g.*, *United States v. Dorsey*, 418 F.3d 1038, 1044 (9th Cir. 2005), *overruled on other grounds by Arizona v. Gant*, 556 U.S. 332, 351 (2009). The United States had no need to call Officer Miller to testify at the suppression hearing. And by pleading guilty, Crawford waived his right to confront witnesses

at trial. *See* Change of Plea Tr. (Doc. 74) at 32:5–9, 33:4–11.

Crawford also asserts that he did not receive video evidence from a traffic stop in Helena on July 7, 2018. *See* Mot. Attachment at 27. Crawford received the video evidence before sentencing. *See* Sentencing Tr. at 9:18–10:1. At the time of the suppression hearing, the question was whether officers reasonably suspected that Crawford was able to access firearms, not whether Gilbreath was more or less knowledgeable about the firearms in the vehicle in Helena.

This claim is denied.

### 4. Illegal Search and Arrest

Crawford contends that the evidence against him was obtained in violation of the Fourth Amendment. *See* Mot. Attachment at 28. Fourth Amendment claims cannot be litigated on collateral review. *See Stone v. Powell*, 428 U.S. 465, 493–95 (1976) (Fourth Amendment claims are not cognizable on collateral review).

In addition, no Fourth Amendment violation occurred. *See* Mem. (Doc. 83) at 2 ¶¶ 1–2, *Crawford*, No. 19-30259.[7] For the same reason—that is, Crawford's continued assertion that he had no interest in the safe or its contents—his claim that the firearms could not lawfully be forfeited does not support any further proceedings. *See* Mot. § 3582 (Doc. 86) at 10 ¶ E.

---

[7] In particular, Crawford's claim that an off-premises search of the safe was illegal is insupportable, because he continues to maintain that he had no possessory interest in the safe.

Crawford now claims officers illegally entered his home.[8] A search of his residence was authorized on reasonable suspicion he was not complying with his conditions. *See* Order (Doc. 35) at 1–2. Testimony at the hearing showed the officers did not have keys and so entered through an open window. *See id*. at 6, 16 n.1; Supp. Hr'g Tr. (Doc. 77) at 21:11–12, 34:9–16. Including his unsupported claims of fabrication of evidence, Crawford does not adduce any sound reason to reconsider the issue or depart from the law of the case. *See United States v. Renteria*, 557 F.3d 1003, 1006–07 (9th Cir. 2009).

To the extent Crawford claims a Montana parole and probation officer has only the arrest authority of a private person, *see* Mot. Attachment (Doc. 103) at 29 ¶ 1, he is mistaken. "Any probation or parole officer may arrest the parolee without a warrant." Mont. Code Ann. § 46-23-1023(2). The application of this statute in Crawford's case has already been decided. *See* Mem. (Doc. 83) at 3 ¶ 3; *Renteria*, 557 F.3d at 1006–07. Neither Montana law nor federal law holds that a parolee cannot be arrested unless an officer has seen him commit a crime or parole violation. *See* Mot. Attachment at 29 ¶¶ 2, 5. Montana Code Annotated § 46-6-507 does not limit probation and parole officers' authority to arrest or require law enforcement to conduct arrests Crawford characterizes as "high-risk apprehension[s]." Mot. Attachment at 30. The statute authorizes probation and

---

[8] Counsel conceded the residence could be searched. *See* Order (Doc. 35) at 14.

parole officers to "detain" the arrestee, then turn him or her over to "the nearest available law enforcement agency or peace officer" to be taken to a secure facility. Mont. Code Ann. § 46-6-507. Whatever role these statutes did or did not play in Crawford's case, none of them would affect the validity of his conviction or sentence, so they do not support further proceedings under § 2255.

The final three claims in Crawford's § 2255 motion, *see* Mot. Attachment at 28–30, are denied.

### 5. Predicate Offense and Categorical Approach

Crawford contends that two Montana statutes, Mont. Code Ann. §§ 45-9-101 and -103, "criminalize and penalize a broader range of conduct than the federal definition captures." Br. § 3582 Mot. (Doc. 86) at 2–10 ¶¶ A–D, 11 ¶ F; *see also* Mot. § 3582 (Doc. 85) at 5.

The argument is not relevant to Crawford's case. His prior convictions for felony drug offenses in Montana courts counted against him simply as prior convictions, *see* U.S.S.G. §§ 4A1.1, 4A1.2 (Nov. 1, 2018); Presentence Report ¶¶ 58–60, not as penalty-range enhancers under, for example, the Armed Career Criminal Act, 18 U.S.C. § 924(e). Crawford could not challenge the validity of a prior state conviction at a federal sentencing hearing, *see* U.S.S.G. § 4A1.2 cmt. n.6 (Nov. 1, 2018), and he cannot do so in a § 2255 motion, *see Daniels v. United States*, 532 U.S. 374, 376, 381–82 (2005). This claim is denied.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2255 Proceedings.  A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further."  *Gonzalez v. Thaler*, 565 U.S. 134, 140 (2012) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Crawford's claims do not meet the relatively low threshold required for a COA.  He appears to misunderstand the purpose and outcome of the suppression hearing.  He almost seems to forget that he pled guilty to one count.

Having now been made aware of all the facts and circumstances that the criminal case did not afford Crawford an opportunity to litigate, the Court does not see any fact or collection of facts that, if proved true, would show that Crawford's guilty plea or his sentence were invalidly entered.  His guilty plea to Count 2 of the superseding indictment was well-supported at the change of plea hearing, and nothing in his current submissions undermines its voluntariness or intelligence.  The evidence before the Court supported a finding by a preponderance of the

evidence that the firearms in the safe were within his constructive possession. Nothing in his current submissions shows that they were not.

Reasonable jurists would find no reason to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS ORDERED:

1. Crawford's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 85, 86, 99, 103) is DENIED.

2. A certificate of appealability is DENIED. The clerk shall immediately process the appeal if Crawford files a Notice of Appeal.

3. The clerk shall ensure that all pending motions in this case and in CV 22-08-BU-DLC are terminated and shall close the civil file by entering judgment in favor of the United States and against Crawford.

DATED this 26th day of August, 2022.

_____
Dana L. Christensen, District Judge
United States District Court